IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| KEITH MANUFACTURING CO. | ) | |
| | ) | |
| VS. | ) | CIVIL ACTION NO. 5:15-cv-00009 |
| | ) | |
| CARGO FLOOR, B.V. and | ) | |
| MAGNIDRIVE B.V. | ) | |

**KEITH'S RESPONSE TO CARGO FLOOR B.V. AND MAGNIDRIVE B.V.'S
MOTION TO DISMISS FOR LACK OF STANDING AND FOR SANCTIONS**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Respondent, KEITH MANUFACTURING CO., and files this Response to Cargo Floor B.V. and Magnidrive B.V.'s Motion to Dismiss for Lack of Standing and for Sanctions (Dkt. No.s 182 and 184), and would show unto the Court the following:

1. The Defendants brought a Rule 12(b)(1) motion to dismiss that alleges Plaintiff Keith Manufacturing Co. ("Keith") lacks standing to assert three patents against the Defendants. (the '530, '215 and '905 patents). The motion also asks for sanctions under Rule 36 based on Keith's general litigation conduct.

**Facts**

2. In the Second Amended Complaint Keith alleges that it owns, among others, patents '530, '215 and '905. (Dkt. # 30).

3. In their Amended Answer to the Second Amended Complaint (Dkt. # 69) Defendants did not dispute ownership of the patents. (See paragraphs 65, 71 and 73 of Dkt. #69). Additionally Defendants alleged Keith's ownership of the patents in their counterclaims for a declaration of non-infringement. (See paragraphs 41, 83 and 97 of Dkt. #69). The Defendants now argue that Keith did not own the patents at the time Keith alleged Defendants were infringing them and therefore lack standing.

The Defendants disclosed the potential standing issue to Keith, for the first time, on September 20, 2017, and informed Keith that Defendants intended to file the present motion on the following Monday, September 25th. Keith took immediate steps to investigate the issue. Based on that investigation Keith has determined the following facts show ownership and standing.

4. "Keith" takes its name from its founder, Mr. Keith Foster. The three patents that are the subject of the motion name Mr. Foster as the inventor. In the absence of an agreement to the contrary with another party, ownership of a patent begins with the named inventor. 35 U.S.C. § 101.

5. In July 1999, Mr. Foster set up an arrangement between himself and his company, Keith Manufacturing Co., calling for Keith Manufacturing Co. to pay Mr. Foster 6.5% of company revenue as a royalty. (MacDonald Dec. ¶ 3). At that time, Mr. Foster memorialized the arrangement in the form of a "non-exclusive" license ("the 1999 non-exclusive license") between himself and Keith Manufacturing Co. (MacDonald Dec. ¶ 3). Pursuant to statute, patents are personal property that may be assigned or conveyed to others. 35 U.S.C. § 261.

6. The 1999 non-exclusive license did not specifically call out the licensed patents by patent or patent application number, other than to state Mr. Foster was the owner of "various United States Letters Patents," and that Keith Manufacturing Co. was granted a non-exclusive, worldwide license to "said patents," except "in railcars." All three of the patents that are the subject of the Defendants' motion had been applied for or issued by the time of the 1999 non-exclusive license and were presumably part of the 1999 non-exclusive license. The 1999 non-exclusive license was not recorded in the U.S. Patent and Trademark Office ("USPTO"). There is no recordation requirement for patent conveyances to be effective. Therefore, public assignment records in the USPTO continued to show that Mr. Foster was the owner.

7. Mr. Foster received royalties directly from Keith Manufacturing Co. on the collection of patents up until he formed Keith Investments, LLC ("Keith Investments") on or before December 21, 2000. (MacDonald Dec. ¶5). Keith Investments was created as a holding company, for estate planning purposes, to enable Mr. Foster to transfer his assets to other family members. . (MacDonald Dec. ¶ 6).

8. As part of Mr. Foster's estate planning, all of the equity shares of Keith Manufacturing Co. were transferred to Keith Investments when it was formed. (MacDonald Dec. ¶ 7). Likewise, on December 21, 2000, Mr. Foster formally assigned all of his rights in all of his patents ("the 2000 assignment") to Keith Investments. (MacDonald Dec. ¶ 7). The 2000 assignment specifically identified and included the three patents that are the subject of Defendants' motion, as part of a larger patent portfolio, attached as an exhibit to the 2000 assignment. In the 2000 assignment, Mr. Foster represented that he had not entered into any agreement or encumbrance that conflicted with the assignment. The 2000 assignment caused Keith Investments to acquire "FOSTER'S entire right, title and interest in and to" the three patents that are the subject of Defendants' motion. The 2000 assignment was not recorded in the USPTO. The USPTO continued to show Mr. Foster as the owner of the patents.

9. The 2000 assignment also put Keith Investments in Mr. Foster's position as a licensor vis-à-vis the earlier 1999 non-exclusive license to Keith Manufacturing Co. As a consequence, the royalties paid to Mr. Foster by Keith Manufacturing under the 1999 non-exclusive license were thereafter transferred and paid from Keith Manufacturing Co. directly to Keith Investments, as of the date of the 2000 assignment. (MacDonald Dec. ¶ 7).

10.     Mr. Foster had previously created a separate entity called KB&B Construction and Engineering, Inc. doing business as Keith's Bins & Bunkers, Inc. ("KB&B"), for the purpose of construction of buildings and the manufacture and sale of bunker systems and railcar systems, which was why the 1999 non-exclusive license to Keith Manufacturing Co. included an exception for railcars. (MacDonald Dec. ¶ 9). After receiving all of Mr. Foster's patent rights under the 2000 assignment, effective December 29, 2000, Keith Investments granted KB&B a non-exclusive license to Mr. Foster's patents ("the KB&B license"). (MacDonald Dec. ¶ 9). The KB&B license was not recorded in the USPTO.

11.     Therefore, as of the end of the year 2000, Keith Investments stood in the position of the owner of Mr. Foster's patents and was the licensor in two separate patent licenses: (1) a non-exclusive license to Keith Manufacturing Co.; and (2) a non-exclusive license to KB&B.

12.     The KB&B license had an initial five year term and was deemed "expired" by the company, and recorded in KB&B company records that way, as of December 31, 2005, leaving a non-exclusive license to Keith Manufacturing Co., at that time. (MacDonald Dec. ¶ 9).

13.     On January 1, 2006, Keith Investments and Keith Manufacturing Co. terminated all previously licenses to Mr. Foster's patents and Keith Manufacturing Co. was granted an "exclusive" license to Mr. Foster's patents ("the 2006 exclusive license"). ( MacDonald Dec. ¶ 11, Ex. 3). The 2006 license gave Keith Manufacturing Co. all substantial rights to Mr. Foster's patents at that time, leaving none for Keith Investments to assign or license to others. *See also* Keith Financial Statements previously disclosed to Defendants (attached as Ex. F to MacDonald Dec. ¶ 13). Mr. Foster passed away shortly thereafter. The exclusive license arrangement was identified in company

*Keith's Response to Cargo Floor B.V. and MagniDrive B.V.'s*
*Motion to Dismiss for Lack of Standing and For Sanctions  – Page 4*

annual company financials that were disclosed to Defendants, and was known to Defendants when they filed the present motion.

14. In 2016 upon discovery of the infringement of the patents by Defendants, Keith obtained an exclusive assignment of the patents from the estate of Keith Foster. This was done based on the belief and USPTO records that Keith Foster was the owner of the patents at the time of his death. (Kaser Declaration ¶ 5). Unknown to the attorney drafting the assignment the Foster estate had been administratively closed on June 27, 2014.

15. Upon being notified that Defendants were challenging ownership of the three patents, Keith applied to the probate court to vacate the administrative closing of Foster's estate to ratify the purported assignment from June 9, 2016. (See Exhibit C attached to Defendants' motion). The probate court vacated the order administratively closing the estate and ratified the actions of the personal representative. (See Exhibit C attached to Defendants' motion). Additionally Keith continued to investigate to trace the ownership of the patents in question.

16. Both Mr. Foster and his long-time patent lawyer were dead, making the tracing difficult. Additionally, Mr. Foster had involved a law firm that did not regularly represent him for estate planning. Mr. Foster used the Portland office of Davis Wright Tremaine ("DWT") for the transactions. (MacDonald Dec. ¶ 6). After checking with Mr. Foster's accountant, Martin MacDonald, about the notes in the financial statement and DWT's role in forming Keith Investments, LLC Keith was able to ascertain the chain of events and locate the assignments and licenses discussed above.

**Argument**

17. As the plaintiff named in this matter, Keith Manufacturing Co. is required to possess standing at the time it brought the patent claims, as defined by § 281 of the Patent Act. "Standing must be present at the time the suit is brought." *Sicom Sys., Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 975–76 (Fed. Cir. 2005). The party "bringing the action bears the burden of establishing that it has standing." Id. at 976. *See Alps S., LLC v. Ohio Willow Wood Co.*, 787 F.3d 1379, 1382 (Fed. Cir. 2015). "Under 35 U.S.C. § 281, a 'patentee' has standing to pursue a patent infringement action." Id. (citing *H.R. Techs., Inc. v. Astechnologies, Inc.*, 275 F.3d 1378, 1384 (Fed. Cir. 2002)).

18. In addition to the patent owner, Federal Circuit case law provides that '[a]n exclusive licensee has standing to sue in its own name, without joining the patent holder where all substantial rights in the patent are transferred.'" Id. (quoting *Int'l Gamco, Inc. v. Multimedia Games, Inc.*, 504 F.3d 1273, 1276 (Fed. Cir. 2007)).

19. Finally, in the case where a patent owner transfers all substantial rights, the transferee is treated as the patentee and can call itself the "owner" of the patent, if it wants. Id. (citing *Propat Int'l Corp. v. Rpost, Inc.*, 473 F.3d 1187, 1189 (Fed. Cir. 2007); *Int'l Gamco*, 504 F.3d at 1276 (observing that a licensee with all substantial rights "is effectively an assignee"); *Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1250 (Fed. Cir. 2000) (explaining that an entity "that has been granted all substantial rights under the patent is considered the owner regardless of how the parties characterize the transaction that conveyed those rights.")) "If, however, the transferee or licensee does not hold all substantial rights, it may 'sue third parties only as a co-plaintiff with the patentee.'" Id. at 1382-83 (quoting *Mentor H/S, Inc. v. Med. Device Alliance, Inc.*, 240 F.3d 1016, 1017 (Fed. Cir. 2001)).

20. "Determining whether a licensee is an exclusive licensee or a bare licensee is a question of ascertaining the intent of the parties to the license as manifested by the terms of their agreement and examining the substance of the grant." Id. (citing *Ortho*, 52 F.3d at 1033–34). "The use of the word 'exclusive' is not controlling; what matters is the substance of the arrangement." Id. (citing *Ortho*, 52 F.3d at 1032). "Because patent rights are rights to 'excludeothers,' see 35 U.S.C. § 154(a)(1), a licensee is an exclusive licensee only if the patentee has promised, expressly or impliedly, that 'others shall be excluded from practicing the invention' within the field covered by the license." Id. (quoting Rite–Hite, 56 F.3d at 1552). "Put another way, an exclusive license is 'a license to practice the invention . . . accompanied by the patent owner's promise that others shall be excluded from practicing it within the field of use wherein the licensee is given leave.'" Id. (quoting *W. Elec. Co. v. Pacent Reproducer Corp.*, 42 F.2d 116, 118 (2d Cir. 1930)). Therefore, licensees under that patent are not exclusive licensees if a patentee-licensor is free to grant licenses to others. Id.

21. Based upon the exclusive assignment from Keith Investments to Keith it is clear that Keith had standing at the time it brought the infringement action.

### Sanctions

22. Defendants now ask for sanctions against Keith based on general complaints of litigation conduct. Defendants' claims are encompassed in the pled but unproven defenses and motions currently pending in this case. Defendants seek sanctions based on Keith's "dishonesty before this Court." Keith has not been dishonest with this Court.

23. Rule 37 sanctions are available to the Court to address a failure to disclose, unless such failure is harmless. *Texas A&M Research Foundation v. Magna Transport, Inc.,* 338 F.3d 394, 402 (Fifth Cir. 1998). The Court should look to four factors: 1) the importance of the evidence; 2) the

prejudice to the opposing party; 3) the possibility of curing any prejudice with a continuance; and 4) the explanation for the parties' failure to disclose. Id.

24.     Keith's attorneys were under the good faith albeit mistaken belief that there had been no transfer of the patent from Keith Foster prior to his death. Therefore the assignment from the estate of Keith Foster to Keith Manufacturing seemed appropriate. The June 9, 2016 assignment was disclosed to Defendants.

25.     Keith also disclosed the action of the probate court vacating the administrative closing.

26.     As allowed by Oregon law Mark Foster requested the probate court to re-open Keith Foster's estate. See ORS 114.255. Simply stated in the original section: ". . . The powers of a personal representative relate back in time to give acts by th person appointed which are beneficial to the estate prior to appointment the same effect as those occurring thereafter."

27.     The assignment from the estate to Keith is valid because it was ratified and related back to Keith Foster's death when the estate as re-opened. *Rennie v. Pozzi*, 294 OR. 334, 340, 656 P.2d 934, 938 (1982). See *Thompson v. United States*, 3:16-cv–00654-YY, 2017 WL1483346, at *7-8 (D. Or. April 5, 2017). The re-opening of the estate is a standard and accepted method should a probate need to be re-opened.

28.     It was only after Defendants raised the issue on September 20, 2017 that it was discovered that Foster had made unrecorded predeath assignments.

29.     The predeath assignments as set out above clearly show that Keith has an exclusive assignment of the patents from Keith Investments to whom Keith Foster assigned them. therefore Keith had standing at the time the case was filed, by the way of those assignments, not the assignment from the Foster estate.

30.     It was counsel's mistaken belief that the June 9, 2016 assignment was the operative ownership document, so no further inquiry was made at the time the assignment was disclosed.

31.     Keith disclosed several years of financial statements to the Defendants in March 2017. Their damages expert reviewed the financial statements as part of his opinion. Keith has now disclosed the assignments discovered in its investigation of the standing issue.

32.     There has been no harm to the Defendants to warrant sanctions. The parties have proceeded upon the belief that Keith had standing, which it actually does under the predeath assignments and exclusive license and post-death assignments. Defendants cannot point to anything that they would have done differently.

WHEREFORE, PREMISES CONSIDERED, Keith Manufacturing Co. requests that Defendants' Motion to Dismiss for Lack of Standing (Dkt. #182) be denied; Defendants' Motion for Sanctions (Dkt. #184) be denied; and for such other and further relief to which it may be entitled.

Respectfully submitted,

/s/   John R. Mercy
John R. Mercy
Texas State Bar No. 13947200
MERCY✶CARTER, L.L.P.
1724 Galleria Oaks Drive
Texarkana, TX  75503
Telephone:  (903) 794-9419
Facsimile:   (903) 794-1268
E-mail:  jmercy@texarkanalawyers.com

Bruce A. Kaser
VANTAGE LAW PLLC
420 Front Street South
Issaquah, WA 98027
Telephone: (425) 391-8741
Facsimile:  (425) 391-8754
Email: bruce@vantagelaw.net
*(pro hac vice)*

>Gordon W. Stewart
>STEWART LAW OFFICES
>2200 Main Street, Suite 511
>Wailuku, HI 96793
>Telephone: (808) 243-9000
>Email: gordy@gstewartlaw.com
>*(pro hac vice)*
>
>ATTORNEYS FOR PLAINTIFF

### CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served this 3rd day of October, 2017 with a copy of the foregoing document via the Court's CM/ECF system per Local Rule CV-5(a)(3). Any other counsel of record will be served by electronic mail, facsimile transmission, and/or first class mail on this same date.

>   */s/   John R. Mercy*
>  John R. Mercy